Joseph Pallazola v. Commissioner.
Pallazola v. Commissioner
Docket No. 28693.
United States Tax Court
1951 Tax Ct. Memo LEXIS 37; 10 T.C.M. (CCH) 1097; T.C.M. (RIA) 51333; November 21, 1951
Solomon Sandler, Esq., for the petitioner. William C. W. Haynes, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income and victory taxes and additions to the tax due to fraud, as follows: Year
Deficiency
Penalty
1942
$ 450.56
$ 225.28
1943
5,444.78
2,722.39
1944
21,784.78
10,892.39 In an amended answer the respondent alleged that the 1942 deficiency was $3,048.81, and the penalty $1,524.41. The issue presented for determination is whether or not petitioner fraudulently understated his income in his income tax returns for 1942, 1943 and 1944, with intent to evade tax. Findings of Fact Joseph Pallazola, [1] the petitioner, is a fisherman *38 who lives in Gloucester, Massachusetts. The petitioner was born in Boston, Massachusetts, but moved to Gloucester as a boy, became a fisherman when he was 18, and has followed this trade for 30 years. In 1942 and 1943 he was hired as captain and crew member of the fishing boat "Linta" and made every fishing trip on that boat in those two years. The wages or income of the men so engaged in fishing were determined as follows: The net proceeds of each trip were divided among the owners of the vessel, the captain, and the members of the crew. Usually each member of the crew received one share, the captain and owner together receiving 7 1/2 shares. If the captain was not the owner he received a larger number of shares than the other crew members. In the present case, as to 1942 and 1943, the petitioner, as captain, but not as owner, received 2 3/4 shares. In 1944 petitioner, as captain and owner, received 7 1/2 shares. The number of men carried as crew varies from a maximum of 15 when seining fish to 7 *39 or less when dragging for fish. After the catch is sold the necessary expenses of the trip for oil, ice, fuel and other items are first deducted and the remainder is divided into the proper number of shares and so distributed. Except for unusual or special circumstances, each member of the crew, excluding the captain, receives the same amount as his wages. The highest wage paid to a crew member of the "Linta" in 1942, as shown by the boat's social security return, was $5,574. For the year 1943 the highest wage revealed by the form was $5,317. In 1943 the petitioner purchased bonds in the amount of $11,500, largely from his earnings in 1943. He also used approximately $4,000 in savings in making the purchase. The petitioner's bank deposits increased by $5,733.50 from fishing income in 1943. On March 20, 1944, Pallazola bought the vessel "Rosie and Gracie" for $25,000 and operated it in the fishing business in 1944. It was stipulated that the total sale of fish caught by this boat between March 20, 1944 and the end of that year amounted to $98,775.73, and that the expenses during the same period aggregated $10,540. The social security return for the boat indicates that for the *40 year 1944 an average of 12 men, in addition to the captain, constituted the crew. During all of this year petitioner, as owner, captain and crew member, received 7 1/2 shares. The petitioner's nephew, Gaspar Pallazola, was purser on the "Rosie and Gracie" and he computed the shares for the captain and crew after deducting the expenses of the trips. In computing the shares, the crew deducted withholding taxes and social security payments on a basis less than the full share actually received. The crew members reported less income than they had received. The social security returns for the petitioner's boat were prepared by an accountant from figures in a book the petitioner had on the boat. For the year 1944 the highest total wages reported on the employer's report of taxable wages paid to each employee was $2,425. The total crew share reported on the social security returns for 1944 was $28,825. Petitioner and other employees witnesses admitted that that they never reported the true amount of their income on the social security returns. Joseph Pallazola was tried and convicted in November, 1947, for attempting to evade income taxes in the year 1944. Gaspar Pallazola was indicted *41 as a result of his testimony in the criminal prosecution against his uncle. Gaspar finally paid income taxes on $4,082 as his one share after a final adjudication of his earnings in 1944. It was stipulated that the taxpayer was entitled to deductions totaling $1,029 for 1942; $819 for 1943, and $14,861.12 for 1944. In 1942 petitioner reported $4,300 as the amount of his salary and other compensation, with a net income of $2,709.05. In 1943 he reported $5,052, with net income of $4,527. For 1944 petitioner reported as gross profit from the fishing vessel "Rosie and Gracie" the sum of $18,187.50, with deductions of $17,323.62, or a net income of $863.88. The petitioner's omission of income in the years 1942, 1943, and 1944, which resulted in the deficiencies here in issue, was due to fraud with intent to evade tax. Opinion VAN FOSSAN, Judge: The respondent seeks to impose fraud penalties under section 293 (b) of the Internal Revenue Code, [2] upon the petitioner because of his failure to report all of his income for 1942, 1943 and 1944 as defined by section 22 (a), I.R.C.[3] The petitioner has conceded the correctness of the respondent's *42 determination of his 1942 income as shown in the respondent's answer. The respondent, however, at the hearing, asserted claim for an additional deficiency for 1942 and amended his answer to include the increased deficiency and penalty pursuant to section 272 (e), I.R.C.[4] The petitioner testified that they understated their income in filing social security returns, and that he made more money in 1942 and 1943 than would result from multiplying by 2 3/4 the highest crew member share found in the social security forms. He estimates his correct gross income for the year 1943 to be $20,000, or more. *43 The respondent fixes the petitioner's net income for 1942 at $14,299.50 by multiplying the highest crew wage as reported for social security purposes by 2 3/4 and subtracting the deduction of $1,029. On the record before us, we conclude that respondent's calculation of the deficiency for 1942 should be approved. For 1943 the respondent places the petitioner's net income at $19,708.50 by the addition of his bond purchase of $11,500, his bank deposit increase of $5,733.50, and living expenses of $3,000 less the deduction of $819. On the whole record and inasmuch as the petitioner estimated his true income at $20,000 or more, we cannot hold the respondent's determination to be erroneous. The petitioner vigorously contests the determination of the 1944 deficiency and states that he did not receive a net income of $44,549.61, as respondent contends. Petitioner argues that he, as captain and crew member, could only receive 7 1/2 crew shares. The respondent and petitioner disagree, however, as to the number and amount of these shares. The social security form indicates that the crew received $28,825 but the petitioner claims that this is grossly understated because of the cheating practiced *44 to save withholding withdrawals. It was stipulated what the gross sales for 1944 were $98,775.73, and the total expenses $10,540, leaving a net of $88,235.73. The respondent deducts $28,825 as crew wages from this total to arrive at petitioner's gross profit of $59,410.73. After the deduction of $14,861.12 is taken, the net income of $44,549.61 is reached. The petitioner agrees with this computation except that he divides the net sales of $88,235.73 into 21 1/2 shares for crew and owner. The petitioner, by this computation, receives 7 1/2 shares of $4,103.98 each for a total of $30,780.01. After the $14,861.12 deduction is made, the net income is $15,918.89. The respondent objects to this method of determining income because it assumes that in 1944 there were always 21 1/2 shares. There was no proof that 15 crew members, including the petitioner as captain, were carried on every trip. The one dragging trip in 1944 required only a crew of seven. The record indicates that the crew consisted of 15 men on relatively few occasions but that an average of 13 men, including the petitioner, was carried. This would require a division of net receipts into 19 1/2 shares. Crew shares would *45 then approximate $4,525 each. Petitioner's share of the net sales receipts would be $33,937.50 if crew shares are determined in this manner. After the deduction of $14,861.12 for expenses, as stipulated, is taken, a net income of $19,076.38 is reached. Because of the inaccuracy and unreliability of the figures reported in the social security returns, we conclude that $19,076.38 more accurately reflects the petitioner's net income for 1944. This decision is substantiated by the fact that Gaspar Pallazola eventually paid 1944 income taxes on $4,082 as his crew share. Joseph Pallazola admits that the boat made about $4,000 per share in 1944, and that he received 7 1/2 shares. We conclude that petitioner has borne the burden of disproving the net income of $44,549.61 fixed by the respondent. The figure of $19,076.38 as net income for 1944 is held to be petitioner's correct net income. The only records kept of income received were deliberately falsified to reflect smaller shares than were actually received. The testimony indicates that this was a common practice rather than an isolated incident. The petitioner intimates that he was forced by the crew to falsify the records in order to *46 derease their withholding taxes, but such fact, if fact it be, is immaterial. The petitioner has failed to give any accounting, explanation or excuse for his failure to report more net income than $2,709.05 in 1942; $4,527 in 1943; and $863.88 in 1944. He admits that he knowingly reported less income than he received. He admits knowing that income tax returns should show the money received during the year. He does not aver that the omission of income was negligent or excusable. His testimony demonstrates that he knew that the social security figures he gave to his accountant were false. When the petitioner's indifference to the right of the Government to receive its toll in the form of taxes for the three consecutive years is considered, there can be no doubt that the taxpayer's intent was to evade taxes by the fraudulent omission of income. Charles E. Mitchell, 32 B.T.A. 1093, affirmed, 303 U.S. 391. Upon all the facts, we uphold the respondent's determination of fraud penalties. The penalty for the year 1944 will be fixed at 50 per cent of the deficiency determined on the recomputation carried out under Rule 50. Decision will be entered under Rule *47 50. Footnotes
1. The petitioner spells his name Pallazolo. The petitioner, however, and all subsequent papers filed in this Court, bear the name Pallazola, which is the name used hereinafter.↩
2. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * *
(b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612 (d) (2). ↩
3. SEC. 22. GROSS INCOME. (a) General Definition. - "Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * * ↩
4. SEC. 272. PROCEDURE IN GENERAL. * * *
(e) Increase of Deficiency After Notice Mailed. - The Tax Court shall have jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined is greater than the amount of the deficiency, notice of which has been mailed to the taxpayer, and to determine whether any penalty, additional amount or addition to the tax should be assessed - if claim therefor is asserted by the Commissioner at or before the hearing or a rehearing.↩